UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ROHAN SAHARIA,

                     Plaintiff,

   -against-

UNITED STATES CITIZENSHIP AND
IMMIGRATION SERVICES,

                Defendant.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __08/05/2022__

No. 21 Civ. 3688 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

     Plaintiff Rohan Saharia ("Plaintiff"), a citizen of India who applied for the EB-5 immigrant investor visa program, brings this action against Defendant United States Citizenship and Immigration Services ("USCIS" or "Defendant") alleging that it has unreasonably delayed his November 12, 2019 EB-5 application in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(1). Presently pending before the Court is USCIS's motion to dismiss pursuant to Federal Rule of Civil Procedure § 12(b)(6).[1] (ECF No. 17.) For the following reasons, the Court DENIES USCIS's motion to dismiss.

## BACKGROUND

### I.    Factual Background

     The following facts are derived from the Complaint and the documents referenced therein and are taken as true and constructed in the light most favorable to Plaintiff for the purposes of this motion.

     Plaintiff is a citizen of India who currently resides in Tarrytown, New York. (Compl. ¶ 1, ECF No. 1.) On November 12, 2019, he filed an Immigrant Petition by Alien Investor ("Form I-

---

[1] By its briefing, USCIS also initially sought to dismiss Plaintiff's claim pursuant to Federal Rules of Civil Procedure § 12(b)(1) ("Rule 12(b)(1)") as moot. USCIS asserted that Plaintiff's claim was rendered moot because he was seeking a visa through the EB-5 immigrant investor visa program which had expired. (*See* Mot. at 10–12; Reply at 2–3; ECF No. 21.) However, Congress has since enacted the Consolidated Appropriations Act of 2022 on March 15, 2022, which included authority for an EB-5 Immigrant Investor Regional Center Program. As a result, USCIS has since withdrawn its contention that the claim is moot. (*See* ECF No. 23.) Therefore, the Court need not consider Defendant's Rule 12(b)(1) arguments.

526" or "I-526") with USCIS. (*Id.* ¶ 77.) He seeks what is known as an EB-5 immigrant visa under the Regional Center Program based on his $500,000 investment in the new commercial enterprise ("NCE") Atlantic American Fortune Fund III, LP administered by the Smith South Atlantic Center, LLC. (*Id.* ¶¶ 76, 78.) To date, Plaintiff's EB-5 application has been pending for approximately 31 months because USCIS has yet to adjudicate his Form I-526 petition. (*Id.* ¶ 80.)

    *a.* *EB-5 Program*

  The EB-5 program allots visas to immigrants who have "invested . . . capital" in a NCE that will "create full-time employment for not fewer than 10 United States citizens" or foreign nationals authorized to work in the United States, excluding the applicant's spouse or children. 8 U.S.C. § 1153(b)(5). At the times relevant to the petition at issue in this case, applicants for the EB-5 program were required to invest at least $1,000,000 in a qualifying enterprise unless the project was in a "targeted employment area," in which case the investment threshold was $500,000. 8 U.S.C. § 1153(b)(5)(B)(ii), (C)(ii); 8 C.F.R. § 204.6(f)(1)-(2).

  Applicants can satisfy the EB-5 "job creation" requirement by showing that their investment will directly create full-time positions for at least 10 employees. 8 C.F.R. § 204.6(j)(4)(i). Alternatively, applicants who participate in the EB-5 Immigrant Investor Program (or "Regional Center Program") can demonstrate that their investment is within an approved regional center and that the investment will "create jobs indirectly through revenues generated from increased exports resulting from the new commercial enterprise." 8 C.F.R. § 204.6(j)(4)(iii), (m)(7). Participants in the Regional Center Program may show indirect job creation through "reasonable methodologies," including "multiplier tables, feasibility studies,

analyses of foreign and domestic markets for the goods or services to be exported, and other economically or statistically valid forecasting devices which indicate the likelihood that the business will result in increased employment." 8 C.F.R. § 204.6(m)(7)(ii). Multiple investors may aggregate their investments, and one NCE can serve as the basis for multiple EB-5 petitions so long as each investor individually meets the monetary and job creation requirements. *See* 8 C.F.R. § 204.6(g).

Foreign nationals apply for the EB-5 Program using Form I-526, Immigrant Petition by Alien Investor. *See* 8 C.F.R. §§ 204.6(a), (c). Applicants must show by a preponderance of evidence that they are eligible to receive an EB-5 visa. 8 U.S.C. § 1361. Even after receiving approval of an immigrant visa petition, applicants must still show, among other things, edibility to receive an immigrant visa. *See Firstland Int'l, Inc. v. U.S. I.N.S.*, 377 F.3d 127, 129 n.3 (2d Cir. 2004) (citing 8 U.S.C. § 1255(a)). "That is, the [USCIS's] approval of an immigrant visa petition is distinct from the issuance of an immigrant visa." *Id.*

Once USCIS has approved an I-526 petition, the applicant may apply for two-year conditional lawful permanent resident ("LPR") status. 8 U.S.C. § 1186b(a). The investor can eventually qualify for full, nonconditional LPR status by submitting a petition that demonstrates the investor has "maintained his or her capital investment" for over two years and "created or can be expected to create within a reasonable time ten full-time jobs for qualifying employees." 8 C.F.R. § 216.6(a)(4)(iii)-(iv).

*b.     USCIS's Processing Procedures for I-526 Petitions*

The Immigration and Nationality Act ("INA") limits the total number of visas available to foreign nationals each year, as well as the number of visas available for nationals of any single country. *See* 8 U.S.C. §§ 1151, 1152. Most visa applications, including the one at issue here, are considered in the order they are filed. *See* 8 U.S.C. § 1153(e). USCIS formerly processed Form I-526 petitions on a "first-in, first-out" basis. *See* Press Release, U.S. Citizenship and Immigration Servs., USCIS Adjusts Process for Managing EB-5 Visa Petition Inventory (Jan. 29, 2020), https://www.uscis.gov/news/news-releases/uscis-adjusts-process-for-managing-eb-5-visa-petition-inventory [hereinafter, USCIS Press Release]. However, in January 2020, USCIS announced that it would "give[ ] priority to petitions where visas are immediately available, or soon available." *Id.* Under the new approach, USCIS evaluates the visa availability for a petitioner's country of birth and uses that information, "along with other factors, to determine which Form I-526 petitions should be processed first." U.S. Citizenship and Immigration Services, Questions and Answers: EB-5 Immigrant Investor Program Visa Availability Approach (April 2, 2021), https://www.uscis.gov/working-in-the-unitedstates/permanent-workers/employment-based-immigration-fifth-preference-eb-5/questions-and-answers-eb-5-immigrant-investor-program-visa-availability-approach. USCIS stated that the "new operational approach aligns with other visa-availability agency adjudications processes, is more consistent with congressional intent for the EB-5 Immigrant Investor Program, and increases fairness in the administration of the program." USCIS Press Release.

*c.     Consolidated Appropriations Act of 2022*

On March 15, 2022, Congress enacted the Consolidated Appropriations Act of 2022. In relevant part, this Act amended 8 U.S.C. § 1153(b)(5) of the INA by adding paragraph (E),

which, *inter alia*, requires USCIS to make visas available to qualified EB-5 applicants who apply through a regional center through September 30, 2027. *See* Consolidated Appropriations Act of 2022, H.R. 2471, Div. BB, § 103(b)(1) (Mar. 15, 2022); *see also* 8 U.S.C. § 1153(b)(5)(E). Since then, on April 12, 2022, USCIS issued an additional alert, explaining that it had "resumed processing regional center-based Form I-526, Immigrant Petition by Alien Entrepreneur, filed on or before the sunset of the previous regional center program on June 30, 2021." U.S. Citizenship and Immigration Services, I-526, Immigrant Petition by Alien Entrepreneur (April 12, 2022), https://www.uscis.gov/i-526.

## II.    Procedural Background

On April 26, 2021, Plaintiff brought the instant action. (Compl., ECF No. 1.) On July 30, 2021, USCIS sought leave to file a motion to dismiss, which the Court subsequently granted and issued a briefing schedule. (ECF Nos. 15 & 16.) On November 8, 2021, the parties filed their respective briefing on the instant motion: USCIS its notice of motion (ECF No. 17), memorandum in support ("Motion," ECF No. 18), and reply ("Reply," ECF No.19); and Plaintiff his response in opposition ("Response in Opposition," ECF No. 20). The parties also filed supplemental letters with legal developments on the matters raised in their respective briefing. (*See* ECF Nos. 21, 22, 23, 24.)

## LEGAL STANDARD

In deciding a motion to dismiss under Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Freidus v. Barclays Bank PLC,* 734 F.3d 132, 137 (2d Cir. 2013). To survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Mere "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action will not do"; rather, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. In applying these principles, the Court may consider facts alleged in the complaint and documents attached to it or incorporated by reference. *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152  53 (2d Cir. 2002) (internal quotation marks and citation omitted).

## DISCUSSION

Plaintiff only asserts one claim against USCIS: that it has unreasonably delayed his EB-5 application in violation of the APA, 5 U.S.C. § 706(1). (Compl. ¶¶ 91  112.) He alleges that Congress has imposed an adjudication timeline for immigration visa petitions of 180 days and that since his petition is pending "outside this timeline," USCIS has unreasonably delayed action in violation of the APA. (*Id.* ¶¶ 96, 103 (citing 8 U.S.C. § 1571(b).) He further alleges that USCIS has taken affirmative actions, unknown to the public, to purposefully delay adjudications of EB-5 petitions, conduct which the Secretary of Department of Homeland Security himself attributes to the previous Administration's policies. (*Id.* ¶ 109.) Plaintiff asserts that this delay has impacted his health and welfare because Plaintiff and his family are currently living in a "state of limbo," and this delays their "eligibility to eventually naturalize as United States citizens." (*Id.* ¶¶ 88, 104.) As relief, Plaintiff requests that the Court declare that delays in the adjudication of the petition were unreasonable and compel adjudication of his petition. (*Id.* at 22.)

USCIS seeks to dismiss Plaintiff's claim for failure to state a claim, arguing that the time frame for USCIS' adjudication of Plaintiff's EB-5 application is not unreasonable under the factors identified in *Telecommunications Research & Action Center v. Federal Communications*

6

*Commission*, 750 F.2d 70 (D.C. Cir. 1984) [hereinafter, *TRAC*], also known as the *TRAC* factors. (Mot. at 24 34.)

The APA requires agencies to "proceed to conclude a matter presented to [them]" in a "reasonable time," 5 U.S.C. § 555(b), and authorizes reviewing courts to "compel agency action unlawfully withheld or unreasonably delayed," *id.* § 706(1). Courts assess the reasonableness of an agency's time frame for an adjudication such as the one at issue here by applying the *TRAC* factors. *NRDC v. U.S. Food & Drug Admin.*, 710 F.3d 71, 84 (2d Cir. 2013) (acknowledging *TRAC* as "setting forth test for determining if agency action is unreasonably delayed"). These factors include: (1) the time agencies take to act, which must be governed by a "rule of reason"; (2) whether "Congress has provided a timetable"; (3) whether "human health and welfare are at stake," in which case delays are "less tolerable"; (4) the effect of expediting "on agency activities of a higher or competing priority"; (5) the "interests prejudiced by delay"; and (6) whether there has been agency "impropriety" contributing to the delay. *TRAC*, 750 F.2d at 80.

However, courts have noted that because the *TRAC* analysis is a fact-sensitive test, it is usually inappropriate to resolve it on a motion under Rule 12(b)(6). *See Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003); *Gutta v. Renaud*, No. 20-CV-06579-DMR, 2021 WL 533757, at *8 (N.D. Cal. Feb. 12, 2021); *but see Palakuru v. Renaud*, 521 F. Supp. 3d 46, 49 50 n.5 (D.D.C. 2021) (dismissing plaintiff's claim of unreasonable delay in adjudication of a Form I-526 petition by applying the *TRAC* factors), *appeal dismissed*, No. 21-5048, 2021 WL 1440155 (D.C. Cir. Apr. 15, 2021); *Thakker v. Renaud*, No. 20 Civ. 1133 (CKK), 2021 WL 1092269, at *6 (D.D.C. Mar. 22, 2021) (same); *Uranga v. U.S. Citizenship & Immigr. Servs.*, 490 F. Supp. 3d 86, 102 06 (D.D.C. 2020) (determining that petitioner failed to state a claim for unreasonable delay under the APA under

7

the *TRAC* test, and given the "Court's ruling that the *TRAC* factors weigh in favor of the government, plaintiff's mandamus claims are deficient as well").

Accordingly, at this stage, the Court will assess the facts from the Complaint and the documents referenced therein  taking them as true and construing them in the light most favorable to Plaintiff   under the *TRAC* factors.

## I.       First *TRAC* Factor: Rule of Reason

The first factor   the time agencies take to make decisions must be governed by a "rule of reason"   is considered the most important. *In re Core Commc'ns Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008). "It requires an inquiry into whether there is 'any rhyme or reason' for the Government's delay   in other words, 'whether the agency's response time . . . is governed by an identifiable rationale.'" *Palakuru*, 521 F. Supp. 3d 46, 50 51 (quoting *Ctr. for Sci. in the Pub. Interest v. FDA*, 74 F. Supp. 3d 295, 300 (D.D.C. 2014)). Whether the agency follows a "rule of reason"

> cannot be decided in the abstract, by reference to some number of months or years beyond which agency action is presumed to be unlawful, but will depend in large part . . . upon the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency.

*Mashpee*, 336 F.3d at 1102.

USCIS asserts that its visa availability approach is a sufficient rationale to guide adjudication. (Mot. at 16.) This approach prioritizes petitions for individuals from countries where visas are currently available or soon to be available, including whether the underlying project has been reviewed. (*Id.* at 17; Reply at 5.) Once a visa is available or soon to be available, the petitions are generally processed based on a 'first-in first-out' (FIFO) approach. (Mot. at 17.) This operational approach aligns with other visa-availability agency adjudication

processes, is more consistent with congressional intent for the EB-5 Immigrant Investor Program, and increases fairness in the administration of the program given that it allows qualified EB-5 petitioners from traditionally under represented countries to have their petitions approved in a more timely fashion. (*Id.*)

Plaintiff sets out four arguments with respect to the first factor. First, he argues that USCIS's visa availability approach is not a uniform rule of reason because there is no identified processing logic for assignment of current I-526 forms. (Resp. in Opp'n at 5  6.) Plaintiff argues instead that USCIS claims both that: i) for its inventory of Forms I-526 where visas are current, it applies a FIFO approach and ii) it prioritizes petitions where the underlying regional center project has been reviewed. (*Id.* at 6.) Plaintiff maintains that USCIS cannot apply both of these rules at once. (*Id.*) Second, Plaintiff argues that USCIS does not follow the visa availability approach because later-filed I-526 petitions have been approved before his own pending petition. (*Id.* at 6  7.) Third, based on data showing a decline in adjudications and increased processing times, Plaintiff argues that no rule of reason governs such delays. (*Id.* at 7  9.) And fourth, Plaintiff argues that USCIS favors certain new NCEs and grants project-wide expedites to specific, favored NCEs, such that USCIS has no basis for such grants. (*Id.* at 9.)

After due consideration, the Court concludes that USCIS's adjudication of I-526 petitions is governed by a rule of reason, and therefore, that the first *TRAC* factor weighs in USCIS's favor.

Courts have previously held that USCIS's procedure at issue here is sufficiently reasonable to satisfy the "rule of reason" inquiry. *See, e.g.*, *Palakuru*, 521 F. Supp. 3d at 51 (finding reasonable USCIS's prioritizing of I-526 petitions for individuals from countries where visas are currently available or soon to be available, then factoring in whether the underlying

project has been reviewed, and otherwise managing workflows in FIFO order.); *Nohria v. Renaud*, No. 20-CV-2085, 2021 WL 950511, at *6 n.5 (D.D.C. Mar. 14, 2021) ("The agency's process is clearly governed by a solid rule of reason   the visa availability approach   meeting the first factor."); *Muvvala v. Wolf*, No. 20-CV-02423-CJN, 2020 WL 5748104, at *3 (D.D.C. Sept. 25, 2020) ("Other federal courts have held that this first-in, first-out method of adjudication constitutes a 'rule of reason' and satisfies the first *TRAC* factor.").

Similarly here, the Court is of the view that USCIS has supplied a rule of reason for the timing of its adjudicative process of I-526 petitions. Hence, the first *TRAC* factor weighs in favor of USCIS.

## II.   Second *TRAC* Factor: Timetable

The second factor considers whether Congress has indicated the time frame for which it expects an agency to act. The content of such a rule may be found in a "timetable or other indication . . . in the enabling statute." *TRAC*, 750 F.2d at 80.

USCIS maintains that Congress has not provided a specific timetable within which the agency must act. (Mot. at 19.) In other words, there is no statutory deadline for a final adjudication on I-529 petitions. (Reply at 8.) USCIS asserts that the 180-day time frame in 8 U.S.C. § 1571, which Plaintiff contends Congress set to support compelling agency action whenever a Form I-526 has been pending for more than 6 months, reflects that this time frame is purely aspirational. (Mot. at 19.) USCIS also argues it has wide discretion in the process and that Congress' intent was for there to be no specific timeline regarding the adjudication of related benefits applications. (*Id*.)

Plaintiff counters that Congress intends the timetable to be six months in accordance with 8 U.S.C. § 1571. (Resp. in Opp'n at 9.) Plaintiff points to various congressional actions,

including the EB-5 Reform and Integrity Act of 2021, which gives time lines for adjudication ranging from 90 to 240 days for various types of EB-5 immigration benefit requests, as evidence of Congress' belief that Forms I-526 should be decided within 6 months. (*Id*. at 10.) While acknowledging that § 1571(b) is not binding, Plaintiff nonetheless argues that the provision is a clear indicator that Congress intended USCIS to make decisions within 6 months. (*Id*. at 10  11.)

While the Court acknowledges that "Congress has given the agencies wide discretion in the area of immigration processing," *Skalka v. Kelly*, 246 F. Supp. 3d 147, 153  54 (D.D.C. 2017), the Court finds this factor weighs in favor of Plaintiff. As Plaintiff correctly points out, Congress has expressly provided that "[i]t is the sense of Congress that the processing of an immigrant benefit application should be completed not later than 180 days after the initial filing of the application[.]" 8 U.S.C. § 1571(b).

Some courts have recognized that "a sense of Congress resolution is not law." *Emergency Coal. to Defend Educ. Travel v. U.S. Dep't of the Treasury*, 545 F.3d 4, 14 n.6 (D.C. Cir. 2008). Instead, courts construe this "sense of Congress" provision as "merely precatory," and that it creates no enforceable rights. *See Yang v. Cal. Dept. of Social Servs.*, 183 F.3d 953, 958 (9th Cir. 1999); *see also Monahan v. Dorchester Counseling Center, Inc.*, 961 F.2d 987, 994  95 (1st Cir. 1992); *see also Nat'l Ass'n of Mfrs. v. SEC*, 800 F.3d 518, 528 n.26 (D.C. Cir. 2015) (noting the First, Third, and Ninth Circuits, have viewed comparable language as "precatory" and "a statement of opinion," rather than "a statement of fact").

Therefore, "[s]ome courts . . . have treated § 1571(b) as 'nonbinding,' prompting them to weigh this factor in the Government's favor, even when the Government's time for adjudicating a visa petition has surpassed 180 days." *Thakker*, 2021 WL 1092269, at *6 (citing *Palakuru*, 2021 WL 674162, at *4.) However, other courts have found that § 1571(b) is "certainly [an]

11

indication of the speed with which it expects the agency to proceed," and weighed this factor in favor of a petitioner when the agency's processing time exceeds 180 days." *Id*. (citing *Palakuru*, 2021 WL 674162, at *4.)

After due consideration, this Court is of the view that this factor weighs in Plaintiff's favor. Although a "sense of Congress" is nonbinding, it is certainly an indication of Congress' stated goal of processing visa petitions within six months as opposed to Plaintiff's waiting time of over two years. *See Uranga*, 490 F. Supp. 3d at 103 (it is "an indication of what the legislature had in mind   after all, Congress had the option of saying nothing on the subject at all.") However, the Court notes that "[t]his finding . . . does not automatically compel a finding that Plaintiff has stated a claim for unreasonable delay to survive a Rule 12(b)(6) motion." *Desai v. U.S. Citizenship & Immigr. Servs*., No. CV 20-1005 (CKK), 2021 WL 1110737, at *6 (D.D.C. Mar. 22, 2021); *see also Uranga*, 490 F. Supp. 3d at 103, 105 (finding that the second factor weighed in favor of plaintiff, yet concluding plaintiff has failed to state a claim for unreasonable delay with respect to his waitlist eligibility)*; Palakuru*, 521 F. Supp. 3d at 52   ("Even if the Court was to conclude that § 1571(b) provides some 'indication of the speed with which [Congress] expects the agency to proceed,' *TRAC*, 750 F.2d at 80, though, the Court's rule-of-reason analysis would remain unchanged.").

### III.   Third & Fifth *TRAC* Factors: Human Health and Welfare at Stake, and Interests Prejudiced by Delay

The third and fifth *TRAC* factors, often considered together, require the Court to examine the nature and extent of the interests prejudiced by delayed agency adjudication. *TRAC*, 750 F.2d at 80; *Ying Yu Liu v. Wolf*, No. 19 CIV. 410 (PGG), 2020 WL 2836426, at *9 (S.D.N.Y. May 30, 202); *see, e.g., Geneme v. Holder,* 935 F. Supp. 2d 184, 194 (D.D.C.2013).

Plaintiff alleges that the delay in adjudicating his I-526 petition is causing Plaintiff and his family significant harm and putting their lives on hold. (Compl. ¶¶ 84, 104.) Plaintiff, who currently holds a valid H-1B visa, alleges that he is restricted in his ability to move jobs, accept new roles/responsibilities within the same employer, or start his own company without risking his visa status. (*Id.* ¶ 86.) Plaintiff contends that the delay in processing his petition along with the end of his H-1B term may leave Plaintiff, his wife, and his child with no option but to move back to India, unsure of when they might be able to return to the U.S. (*Id.* ¶ 87.) Plaintiff further states that he and his wife are currently living in a state of limbo due to the lack of clarity as to their immigrant status and are at risk of losing their jobs and being compelled to leave the United States. (*Id.* ¶ 88 89.)

USCIS argues that these allegations do not tip the *TRAC* factors in Plaintiff's favor because this sort of prejudice is inherent in the adjudication process. (Mot. at 21.) USCIS further asserts that the I-526 petition is purely a preliminary step in the process of becoming a lawful permanent resident, and therefore, until Plaintiff's petition is approved, Plaintiff's allegations are speculative. (*Id.*)

After due consideration, when taking all of the Complaint's allegations as true at this stage, the Court finds Plaintiff's allegations are sufficient to tip the third and fifth factors in his favor because his specific allegations surrounding the harm to his health and welfare are sufficient to state a claim.

In similar cases, courts have ruled that solely alleging that a delay in adjudication will adversely affect Plaintiff's life so as to put "the lives of his family members on hold" is insufficient. *See, e.g., Palakuru*, 521 F. Supp. 3d at 53; *Hulli v. Mayorkas*, 549 F. Supp. 3d 95, 102 (D.D.C. 2021). However, Plaintiff here has alleged other kinds of adverse effects on his life

13

other than putting "the lives of his family members on hold," including potential loss of employment and the potential of being forced to leave the United States. (Compl. ¶¶ 87  89.)

"Although the EB-5 Program is economic-centric, the benefits conferred by the program clearly impact the welfare of individual petitioners." *Nadhar v. Renaud*, No. CV-21-00275-PHX-DLR, 2021 WL 2401398, at *4 (D. Ariz. June 11, 2021). Further, "[t]here is little question that, to some extent, [Plaintiff's] welfare is at stake while he continues to sit in limbo, precluded from pursuing lawful permanent resident status." *Islam v. Heinauer*, 32 F. Supp. 3d 1063, 1073 (N.D. Cal. 2014).

Other courts have also found that these two factors weigh in favor of Plaintiff in comparable situations. *See Khan v. Johnson*, 65 F. Supp. 3d 918, 930 31 (C.D. Cal. 2014) ("[P]laintiffs' interests in pursuing permanent residence and citizenship, or at least a final determination on their application so as to end a stressful waiting period, are compelling"); *see also Ray v. Cuccinelli*, No. 20-CV-06279-JSC, 2020 WL 6462398, at *9 (N.D. Cal. Nov. 3, 2020) (finding third and fifth *TRAC* factors weighed in favor of plaintiffs because "Defendant does not dispute that Plaintiffs will suffer adverse consequences should they lose employment eligibility."); *Nadhar*, 2021 WL 2401398, at *4 (finding Plaintiffs' allegations of hardships caused by the uncertainty and delay in their I-526 petition adjudications tipped the third and fifth factors in favor of Plaintiffs.)

And as noted above, at this stage, this Court must accept all factual allegations as true and draw all reasonable inferences in Plaintiff's favor. *Twombly*, 550 U.S. at 544. Thus, when drawing all reasonable inferences in his favor, the Court concludes that Plaintiff has pleaded plausible allegations that his and his family's health and welfare are at stake. Therefore, the

Court concludes that the nature and extent of the interests prejudiced by the delay weigh in Plaintiff's favor.

IV.    **Fourth *TRAC* Factor: Effect of Expediting Agency Activities**

The fourth factor requires the Court to assess the impact that expediting the delayed action would have on other agency priorities. *TRAC*, 750 F.2d at 80. Specifically, whether expediting the adjudication of Plaintiff's I-526 petition would "harm other agency activities of equal or greater priority." *Nibber v. U.S. Citizenship & Immigr. Servs.*, No. 20-3207 (BAH), 2020 WL 7360215, at *7 (D.D.C. Dec. 15, 2020). It is also important to evaluate "competing priorities in assessing the reasonableness of an administrative delay . . . refus[ing] to grant relief when all the other factor*s* considered in *TRAC* favored it, where a judicial order putting the petitioner at the head of the queue [would] simply move[ ] all others back one space and produce[ ] no net gain." *Mashpee*, 336 F.3d at 1100 (quoting *In re Barr Labs.*, 930 F.2d 72, 75 (D.C. Cir. 1991)).

USCIS contends that this factor weighs in its favor because compelling it to adjudicate Plaintiff's petition would require USCIS to divert resources away from noncitizens who, unlike Plaintiff, already have statutorily authorized bases for their immigration requests. (Mot. at 22.) Further, USCIS argues that a court order compelling USCIS to adjudicate Plaintiff's petition would require reordering the agency's priorities, including advancing Plaintiff's petition ahead of other similarly situated petitions (*Id.* at 22.)

Plaintiff counters that USCIS's claim that it adjudicates Forms I-526 in a "line" should not be accepted as true at the motion to dismiss stage. (Resp. in Opp'n at 11 12.) Further, USCIS adjudicates these petitions not in a "line", but arbitrarily. (*Id.* at 11.) Plaintiff argues that expediting these adjudications complies with USCIS's priorities and will not prejudice other

interests. (*Id*. at 12.) Since USCIS prioritizes EB-5 petitions when it has already reviewed the sufficiency of the investor's NCE, and Plaintiff has invested in an NCE associated with a Regional Center, Plaintiff contends his petition aligns with USCIS's purported adjudication priorities. (*Id*.) Plaintiff further contends that similarly situated applications that were filed earlier than Plaintiff's application do not constitute a higher priority for two reasons. (*Id*.) First, no Agency publications identify this as a competing priority. (*Id*.) And second, USCIS has one office that handles all EB-5 related benefit requests, therefore, adjudicating Plaintiff's petition now will not harm any competing priority. (*Id*.) At most, it will cause a *de minimis* impact on applications of the same priority that use the same resources. (*Id*.)

After due consideration, the Court concludes that Plaintiff has failed to provide a sufficient reason why the Court should order USCIS to give Plaintiff preferential treatment over other similarly situated applicants. *See Kangarloo v. Pompeo*, 480 F. Supp. 3d 134, 142 (D.D.C. 2020). "Agency officials not working on [Plaintiff's I-526 petition] presumably have not just been 'twiddl[ng] their thumbs.' Perhaps Congress should earmark more funds specifically to [I-526 petition processing], but that is a problem for the political branches to work out." *In re Barr Labs., Inc.*, 930 F.2d at 75 (quoting *Bd. of Trade of City of Chicago v. SEC*, 883 F.2d 525, 531 (7th Cir. 1989)).

A court order compelling USCIS to process Plaintiff's application "would put him ahead in the queue of those similarly situated." *Desai*, 2021 WL 1110737, at *7; s*ee, e.g., Palakuru*, 521 F. Supp. 3d at 53 ("Granting [plaintiff] relief here would advance his petition in front of others similarly situated   with respect to the availability of visas and investment in a regional center   who filed their petitions earlier."); *see also Xu v. Nielsen,* No. 18 Civ. 2048 (BMC), 2018 WL 2451202, at *2 (E.D.N.Y. May 31, 2018) ("[T]he competing-priority issue is weighty.

16

There are many other applicants who have waited even longer than plaintiff; to grant him priority is to push them further back in line when the only difference between them is that plaintiff has brought a federal lawsuit. That factor should not give him any advantage. . . .")

As such, the Court finds that granting Plaintiff's requested relief would result in moving him ahead in the processing queue to the detriment of other similarly situated applicants. Hence, the fourth factor weighs in favor of USCIS.

### V.        Sixth *TRAC* Factor: Agency's "Impropriety" Contributing to the Delay

Lastly, for the sixth *TRAC* factor, a court "must determine whether the agency has acted in bad faith in delaying action." *Gona v. U.S. Citizenship & Immigr. Servs.*, 20-CV-3680-RCL, 2021 WL 736810, at *5 (D.D.C. Feb. 25, 2021). However, "the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed." *TRAC*, 750 F.2d at 80 (quoting *PCHRG v. FDA*, 740 F.2d 21, 34 (D.C. Cir. 1984) (internal quotation marks omitted).

Plaintiff alleges that bad faith infected the adjudication process because USCIS took affirmative steps to delay the adjudication of I-526 petitions, including the assignment of IPO staff to non-IPO matters. (Resp. in Opp'n at 16.) Plaintiff asserts that USCIS expedites I-526 petitions for certain NCEs, but not others, ultimately delaying other EB-5 petitioners. (*Id*.) Plaintiff further contends that USCIS has admitted that they provided a project-wide expedite to the owners of the Appalachian EB-5 Regional Center, as evidenced by a letter from USCIS to the owners of the Regional Center admitting an expedite was granted, but then ultimately cancelled. (ECF No. 24.)

USCIS contends that Plaintiff's allegations lack factual content to support a reasonable inference that it acted in bad faith. (Reply at 10.) USCIS counters that the alleged decline in

USCIS's productivity, alone, does not establish impropriety. (Mot. at 24.) Further, increased completion rates of I-526 petitions, evidenced by Sarah M. Kendall's remarks at the Immigrant Investor Program Office 2019 IIUSA EB-5 Industry Forum, reflect enhanced integrity and training measures. (*Id*.) Moreover, USCIS argues that any disruption to operations is based on lapses in statutory authorities, and not in bad faith on its part. (*Id*.)

Even when construing the Complaint in his favor, the Court concludes that, as USCIS correctly points out, Plaintiff's allegations lack "factual content that allows the court to draw the reasonable inference" of bad faith or impropriety. (Reply at 10; *Iqbal*, 556 U.S. at 678.) "As *TRAC* directs, however, the lack of plausible allegations of impropriety does not weigh against Plaintiff, and therefore does not alter the Court's analysis." *Thakker,* 2021 WL 1092269, at *8 (citing *Palakuru*, 2021 WL 674162, at *6 (considering the sixth *TRAC* factor "neutral" even though the plaintiff alleged that the government had engaged in "purposeful delay" and "artificially inflate[d] Form I-526 processing times")).

Given that the *TRAC* analysis is a fact-sensitive inquiry, at this stage, it would be premature for the Court to rule on whether Plaintiff has sufficiently alleged bad faith. *Gona*, 2021 WL 736810, at *5 (finding Plaintiff did not prove she was likely to succeed on the merits with respect to the sixth factor given inconclusive evidence); *Penn v. Blinken*, No. CV 21-1055 (TJK), 2022 WL 910525, at *7 (D.D.C. Mar. 29, 2022) (noting the Court cannot reasonably infer from any allegations that bad faith would sway the sixth factor in Plaintiff's favor.) For those reasons, the Court finds that the sixth factor is neutral and does not significantly contribute to the Court's consideration of Plaintiffs' likelihood of success on the merits.

In total, three of the *TRAC* factors weigh in favor of Plaintiff, two weigh in favor of USCIS, and one is neutral. After balancing the factors at this stage, the Court concludes that the

*TRAC* analysis favors Plaintiff. Accordingly, because Plaintiff has "nudged [his] claims across the line from conceivable to plausible," *Twombly*, 550 U.S. at 570, the Court denies USCIS's motion to dismiss.

## CONCLUSION

For the foregoing reasons, the Court DENIES Defendant's motion to dismiss Plaintiff's Complaint. The Court further DIRECTS Defendant to file an answer to Plaintiff's Complaint on or before September 2, 2022. The Court moreover DIRECTS the parties to confer and jointly complete and file a Case Management Plan and Scheduling Order (blank form attached hereto) by September 23, 2022. After review and approval of the Scheduling Order, the Court will issue an Order of Reference to the Magistrate Judge Judith C. McCarthy for general pretrial purposes. The parties shall contact Judge McCarthy within seven (7) business days of the date of the Order of Reference to schedule a conference. The Clerk of the Court is finally directed to terminate the motion at ECF No. 17.


Dated:  August 5, 2022
      White Plains, New York

SO ORDERED:

NELSON S. ROMÁN
United States District Judge

UNITED STATES DISTRICT COURT                                    Rev. Jan. 2012
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

                                                    **CIVIL CASE DISCOVERY PLAN**
                              Plaintiff(s),          **AND SCHEDULING ORDER**

        - against -


                              Defendant(s).          _____ CV _____ (NSR)


-------------------------------------------------------------x

  This Civil Case Discovery Plan and Scheduling Order is adopted, after consultation with counsel,
pursuant to Fed. R. Civ. P. 16 and 26(f):

1.      All parties [consent] [do not consent] to conducting all further proceedings before a
        Magistrate Judge, including motions and trial, pursuant to 28 U.S.C. § 636(c).  The parties
        are free to withhold consent without adverse substantive consequences.  (If all parties
        consent, the remaining paragraphs of this form need not be completed.)

2.      This case [is] [is not] to be tried to a jury.

3.      Joinder of additional parties must be accomplished by _____.

4.      Amended pleadings may be filed until _____.

5.      Interrogatories shall be served no later than _____, and responses thereto
        shall be served within thirty (30) days thereafter.  The provisions of Local Civil Rule 33.3
        [shall] [shall not] apply to this case.

6.      First request for production of documents, if any, shall be served no later than
        _____.

7.      Non-expert depositions shall be completed by _____.

        a.      Unless counsel agree otherwise or the Court so orders, depositions shall not be held
                until all parties have responded to any first requests for production of documents.

        b.      Depositions shall proceed concurrently.

        c.      Whenever possible, unless counsel agree otherwise or the Court so orders, non-party
                depositions shall follow party depositions.

8.      Any further interrogatories, including expert interrogatories, shall be served no later than _____.

9.      Requests to Admit, if any, shall be served no later than _____.

10.     Expert reports shall be served no later than _____.

11.     Rebuttal expert reports shall be served no later than _____.

12.     Expert depositions shall be completed by _____.

13.     Additional provisions agreed upon by counsel are attached hereto and made a part hereof.

14.     **ALL DISCOVERY SHALL BE COMPLETED BY** _____.

15.     Any motions shall be filed in accordance with the Court's Individual Practices.

16.     This Civil Case Discovery Plan and Scheduling Order may not be changed without leave of Court (or the assigned Magistrate Judge acting under a specific order of reference).

17.     The Magistrate Judge assigned to this case is the Hon. _____.

18.     If, after entry of this Order, the parties consent to trial before a Magistrate Judge, the Magistrate Judge will schedule a date certain for trial and will, if necessary, amend this Order consistent therewith.

19.     The next case management conference is scheduled for _____, at _____. (The Court will set this date at the initial conference.)

SO ORDERED.

Dated:  White Plains, New York

        _____

                                            _____

                                            Nelson S. Román, U.S. District Judge